*United States v. Green*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-six.

Present:
> DEBRA ANN LIVINGSTON,
> JOSEPH F. BIANCO,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

      *Appellee,*

    v.                             25-1681

WILLIE GREEN,

      *Defendant-Appellant.*

---

| | |
|---|---|
| For Appellee: | JOSHUA ROTHENBERG, Assistant United States Attorney, John A. Sarcone III, First Assistant United States Attorney, United States Attorney's Office for the Northern District of New York, Syracuse, NY, *for* Todd Blanche, Acting Attorney General. |
| For Defendant-Appellant: | JAMES P. EGAN, Assistant Federal Public Defender, Office of the Federal Public Defender for the Northern District of New York, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction is **AFFIRMED** and that this case is **REMANDED** with instructions to **VACATE** the sentence and to **RESENTENCE** in a manner consistent with this order.

Defendant-Appellant Willie Green ("Green") appeals from the judgment of the United States District Court for the Northern District of New York (Scullin, *J.*), entered on June 26, 2025, after a guilty plea to firearms possession as a felon, in violation of 18 U.S.C. § 922(g)(1). The district court convicted Green of the firearms charge and sentenced him, after applying an enhancement pursuant to § 2K2.1(b)(6) of the 2024 U.S. Sentencing Guidelines ("Guidelines"), to 63 months in prison and three years of supervised release. On appeal, Green argues that the § 922(g)(1) conviction violated the Second Amendment, that the district court imposed a procedurally unreasonable sentence by clearly erring in its factual findings supporting the Guidelines enhancement, and that the district court's imposition of 13 conditions of supervised release was procedurally flawed under our recent decision in *United States v. Maiorana*, 153 F.4th 306 (2d Cir. 2025) (*en banc*).[1] We assume familiarity with the facts, procedural history, and issues on appeal.

\*     \*     \*

---

[1] As Green acknowledges, his Second Amendment arguments are foreclosed by our decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025). He raises these arguments only to preserve them for potential *en banc* or Supreme Court review.

We review criminal sentences for abuse of discretion, which requires that we "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range" or "selecting a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). To find clear error, we must conclude not merely that we would have weighed evidence differently but that, "on the entire evidence[,] we are left with the definite and firm conviction that a mistake has been committed." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020) (alteration in original) (quoting *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007)). We have explained that "the mere presence of evidence pointing in both directions does not establish clear error," *United States v. Osuba*, 67 F.4th 56, 66 (2d Cir. 2023), provided "there are two permissible views of the evidence," *id.* (quoting *United States v. Ruggiero*, 100 F.3d 284, 291 (2d Cir. 1996)).

The Presentence Investigation Report ("PSR") concluded that "a preponderance of the evidence demonstrates that the defendant possessed and discharged the firearm involved in this offense during two unlawful shootings within the City of Albany on December 19, 2021, and December 30, 2021." PSR ¶ 24. The district court held a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), and ultimately adopted the PSR's factual findings as its own. "Specifically," it then added, "the Court finds that a preponderance of the evidence supports the conclusion that the defendant possessed the firearm that was used in connection with two felonious assaults in the City of Albany, although they only had to prove the one today -- only attempted to prove the one, the December 30, 2021 [one]." App'x at 197.

As evidence that Green carried out the December 30th shooting, the Government called a detective who identified a man on security footage from that day as "consistent with Mr. Green's appearance" and testified that the same person can be seen later in the video crouched in a firing

3

position during the shooting. *Id.* at 137–38. The district court agreed, pointing to the similarity of the shoes worn by the person seen later in the video and finding that "they were the same shoes . . . by the same person." *Id.* at 190; *see* Gov't Br. at 38 (citing this page of the appendix and stating that "the district court found that Green was the person who crossed the street, the person who knelt, and the shooter"). However, the video footage provided to the district court clearly demonstrates that these are two different people. Moments before the shooting, two people with tan boots but different-colored jeans stand near a white car. Ex. 1 at 23:23:32.[2] Both people cannot be Green. In the video footage, the person identified by the detective crosses the street and stands next to two other people by the white car before walking and leaning toward the car windows. *See id.* at 23:20:40–23:23:30; Ex. 2 at 23:20:05–23:20:30. When the shooting begins, the three people scatter, with the person the detective identified appearing to sprint north. *See* Ex. 1 at 23:23:32–23:23:48. The Government emphasizes the district court's finding that the video is "fuzzy," App'x at 179, but that fuzziness does not obscure these events or the essential fact that the person crouching and another man identified as consistent with Green's build are two different people, even if they were wearing the same type of tan shoes. The district court's finding to the contrary was clearly erroneous.

The Government advances two alternative theories regarding the December 30th shooting. It first argues that the detective may have misidentified Green. That is possible, but the Government offers no reason why this Court should discount the Government's own theory below, particularly where the district court appears to have adopted it as a factual finding. On remand, the district court is free to revise its factual findings, but we decline the Government's invitation

---

[2] The exhibits are defense exhibits shown at the *Fatico* hearing and provided to this Court on appeal. Timestamps are the internal timestamps of the video exhibits, in 24-hour format.

to replace the district court's actual findings with ones that it could have made. The Government's second alternative theory of the December 30th shooting is that Green could be the "person holding an object, consistent with a gun, over the roof of the white sedan when the people on the corner react while the person who kneels in the street is making his way around the white sedan." Gov't Br. at 39. But even assuming *arguendo* that this person was shooting a weapon, the video footage appears to refute any conclusion that the person leaning over the car is the person earlier identified as having a build consistent with Green. Among other things, there appear to be white stripes on the pants of the person leaning over the car, which is inconsistent with the clothing worn by the person identified by the detective. *See* Ex. 2 at 23:23:08.

As for the December 19th shooting, the district court concluded that a preponderance of the evidence showed that Green discharged the firearm on that day, as indicated in the PSR. At the hearing, the Government abandoned reliance on the December 19th shooting, but the district court still made findings regarding that shooting.[3] That is permissible. *See United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989) ("The sentencing court's discretion is 'largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972))). But the district court's determination that Green perpetrated the December 19th shooting is intertwined with its flawed factual finding as to

---

[3] We reject the Government's argument that Green's challenge to the district court's December 19th finding fails on waiver or plain error grounds. Although Green acknowledged below that "NIBIN [National Integrated Ballistic Information Network] results . . . appear to support the conclusion that the gun possessed by Mr. Green on January 1, 2022 discharged the bullets in the two prior shootings," he added in a footnote that he had not yet received the requested microscopic comparisons to the December 19th casings. App'x at 94–95 & n.1. And while Green did not object to the PSR's factual statement that "NIBIN testing results showed a correlation between the test fired casing . . . and 9mm shell casings recovered from [the December 19th shooting]," PSR ¶ 24, he clearly objected to the *inference* that this fact "establish[ed] [his] involvement" in the December 19th shooting. App'x at 94.

the December 30th shooting. And we cannot conclude that this error was harmless as to Green's involvement in either incident.

The Government argues, finally, that remand is unnecessary because the district court stated that it would impose the same sentence "regardless of any potential miscalculations in the guidelines." App'x at 198; *see United States v. Darrah*, 132 F.4th 643, 652 (2d Cir. 2025) (finding harmless error where "[t]he district court specifically stated: 'Had the guideline range not been affected by the five-level enhancement,' the 106-month sentence it concluded was appropriate still would have been below the resulting Guidelines range" (quoting the appendix)). Although the district court did not identify a specific enhancement in making this statement, the only Guidelines dispute in this case involved the § 2K2.1(b)(6) enhancement. We disagree, however, that the district court's remarks as to the potential harmlessness of a hypothetical Guidelines error are sufficient in this case to establish the harmlessness of the factual error at issue.

In sentencing Green, the district court specifically referenced "the preponderance of the evidence that supports him being involved in those shootings that were at issue here today." App'x at 198. Although the district court stated that it would impose the same sentence regardless of any Guidelines error, it did not make any similar disclaimer regarding any error in its factual findings. And the erroneous factual finding at issue here was central to the district court's conclusion that Green was the shooter in two separate incidents, and to its determination to apply the § 2K2.1(b)(6) enhancement. Under these circumstances, we agree with Green that, "[w]hile removal of the district court's erroneous factual findings might not alter the district court's general concern for Green's risk of recidivism, the government has failed to show that removal of the factual errors would not also alter the weight the district court placed on that concern . . . ."

6

Reply Br. at 16–17. Accordingly, we remand to the district court with instructions to vacate Green's sentence and resentence him in a manner consistent with this order.[4]

To be clear, our ruling today is limited to the procedural reasonableness of the sentence. The district court may conclude, upon further factual inquiry, that Green possessed the gun on the dates in question in connection with the shootings. *See, e.g.*, *United States v. Ortega*, 385 F.3d 120, 123 (2d Cir. 2004) ("[T]he preponderance of the evidence must indicate that 'the firearm served *some purpose* with respect to the felonious conduct.'" (emphasis added) (quoting *United States v. Spurgeon*, 117 F.3d 641, 644 (2d Cir. 1997))). We express no view as to Green's role in these shootings, nor as to the applicability of the challenged sentencing enhancement. We determine merely that the district court's sentencing determination was premised, here, on an erroneous factual finding that cannot be deemed harmless on the record before this Court.

\* \* \*

Accordingly, we **AFFIRM** the judgment of conviction. We **REMAND** to the district court with instructions to **VACATE** Green's sentence and to **RESENTENCE** him in a manner consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] Because we vacate the sentence for its reliance on clearly erroneous facts, we need not decide whether vacatur is warranted as to the conditions of supervised release. We note that the Government has conceded on appeal "that under this Court's intervening *Maiorana* decision, a limited remand is required for the district court to address the standard conditions of supervised release, regardless of the standard of review." Gov't Br. at 55; *see Maiorana*, 153 F.4th at 315.